# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed June 24, 1897.

THE IRVINGTON REAL ESTATE CO. OF BALTIMORE CITY
VS.
EDWARD V. O'KEEFE.

*Gans & Haman* for plaintiff.

*Richard Bernard & Son* for defendant.

STOCKBRIDGE, J.—

The bill has been filed in this case for the purpose of having a contract of sale entered into between the parties to this cause on the 16th of October, 1894, reformed, and when so reformed, then of having it specifically enforced. There is practically no question of law in the case which is controverted, only questions of fact, and the case is, therefore, one to be determined from the testimony. A bill was previously filed by this same plaintiff for the specific enforcement of the contract, which is the subject-matter of litigation in this case, which bill was, after testimony and argument, dismissed by the Circuit Court "without prejudice," thus making it competent for this Court to consider the issues now presented, if the Court shall find that the contract ought to be reformed, but if not, then in view of the former determination this case would clearly be res adjudicata.

Written instruments may be reformed by a Court of Equity in cases of fraud or mistake only. There is no question of fraud in this case, but it is alleged that there is a mistake, and that the terms of this contract do not correctly represent that which was the clear understanding of the parties to it at the time that it was entered into.

Courts are naturally and properly loath to modify the terms of a written instrument after a long lapse of time, and therefore it is required first that the mistake be material, second that it was mutual, third that it was unintentional, and fourth that there shall have been no negligence upon the part of the party discovering the mistake in moving for its correction. It is further required that the proof of the mutuality of the mistake sought to be corrected shall be proven, not merely by a preponderance of the testimony, but so clearly as to make the conclusion practically irresistable that the mistake alleged was in fact a mistake, and that it was the mutual mistake of both the parties.

The contract of sale in this case after describing the property, declares that it is "subject to the opening of streets and

alleys as contemplated by Company and as to grades established by Mr. Mavin, surveyor;" and the bill of complaint alleges that it should read "as to grades *to be* established by Mr. Mavin, surveyor." Thus while the paper itself seems to refer to certain grades as already established at the time of its execution, the allegation is that it should read so as to be subject to grades to be established by the surveyor at some future time. The question is therefore presented what was the mutual understanding of the parties to the agreement in this regard at the time of its execution, on the 16th day of October, 1894. There are but two of the witnesses who testify upon this matter: Mr. John F. Williams, who was at that time the President of the present plaintiff, and who prepared the contract of sale, and Mr. O'Keefe, the defendant in the case. Mr. Williams testifies that his recollection is distinct and clear, that he and Mr. O'Keefe discussed the matter, that he, Williams, told O'Keefe that the grades were not established, that Mr. Mavin, the engineer, was engaged upon the work, and that the contract would have to be drawn in such a way as to leave the Company in control of the grades and opening of the streets, that his purpose in drawing the contract was to leave in the Company the right to control and the power to open the streets where it saw fit, and to establish the grades, and that Mr. O'Keefe agreed to and understood clearly. This testimony is in no wise shaken by the cross-examination, but is substantially repeated with the addition that O'Keefe took the risk of the grades to be established by the Company.

Mr. O'Keefe upon direct examination denies in general terms that anything was said at his interview with Mr. Williams from which he could infer that the grades in front of the property about to be agreed to be purchased by him were not established; and then, upon cross-examination, materially qualifies his denial by saying that if such a conversation took place that he did not hear it; that he paid no attention to the conversation, and that he would have signed the contract whatever was in it; and in his next answer excepts the provision with regard to grades to be established from the sweeping admission just made; then a moment later he declares that he read

the contract as being subject to "the grade *to be* established by Mavin," and in the very next answer following says his understanding was that the contract spoke of the grade as "now established."

It is to be borne in mind that this interview took place within about one month after the plaintiff had purchased the property, which was a very considerable tract that it was about opening up for improvement by the building of suburban cottages thereon, and the conclusion is irresistible that the witness O'Keefe told the exact truth when he testified that he paid no special attention to the conversation with Mr. Williams, which conversation is positively testified to by Mr. Williams, and not denied by Mr. O'Keefe, and that on the 16th day of October, 1894, O'Keefe would have signed the contract whatever which had been presented to him by Mr. Williams, provided only, it contained a reasonably accurate description of the property that he desired to purchase, and stated correctly the amount of the purchase money that he had offered for it, and that in all other matters he was ready to assent, and did in fact assent, to whatever conditions the company saw fit to impose. So clear is this that the Court has no hesitation in determining that the contract should be reformed and taken so as to read as to grades to be established by Mr. Mavin, surveyor.

The contract of sale already mentioned having been entered into, the plaintiff proceeded with the improvement of its property and in the course of this, at some time, which is not definitely fixed by the evidence, Mr. Mavin, the surveyor, laid out the profile of the street in front of the property sold to the defendant, and drew thereon by the direction of a general manager of the company, Mr. Joseph M. Cone, a line to indicate the grade of the street, but in so doing the surveyor protested to Mr. Cone that the grade as platted by this line would not be satisfactory, and that it should be lower in front of property sold to O'Keefe, than indicated by the line so drawn. Mr. Cone, however, preferred to see the grade laid out on the land, as it had been suggested by him. and the graders went to work and graded the land to somewhere in the vicinity of the grade as laid out by what I will call the Cone line, and then suspended operations for a time, but

the anticipations of the engineer proving correct, this experimental grade was abandoned and the grade originally urged by the surveyor was adopted and the street graded in accordance therewith. Mr. O'Keefe has not complied with his part of the argeement of sale, and bases his refusal so to do upon the ground that the street has been graded to a greater depth in front of his property than the grade established by Mr. Mavin, surveyor, and that the result of such extra grading has been to seriously damage the value of his property. With the question of damage, this Court has nothing to do.

As to the establishment of a grade, the weight of evidence is overwhelming that no grade whatever had been established at the time of the signing of the contract on the 16th of October. Mr. O'Keefe testifies that before the signing of the paper, he called on the surveyor, and was told by him that the grade in front of his property would be "about six or seven feet," but in this he is flatly contradicted by the surveyor and all the evidence in the case tends to substantiate the testimony of the surveyor rather than that of Mr. O'Keefe. But it is further suggested that when Mr. Mavin, the surveyor, drew upon the profile plat the grade line as recommended by Mr. Cone, that such act became and was the establishment of the grade of the street at that point by the surveyor, and that his power in that direction was exhausted and at an end. The word "establish" is defined by the lexicographers to mean, to settle and fix firmly, to place on a permanent footing, to make firm, stable and constant, to render valid by approval; and these definitions all imply that such act shall be done by some one having the authority to settle or render valid the specific act. Now, in this case, the contract specifies that the surveyor is the repository of this power; it nowhere intimates that it was the general manager, nor is there a scintilla of proof that Mr. Cone, as general manager, had any such authority, and even if he had, Mr. Cone distinctly testifies upon the stand that the original line was an experimental one, not determined on, but one which he hoped might be, so as to save the company additional expense in grading. There is not a particle of testimony in the case from which the Court can reasonably conclude that the

line drawn by Mr. Mavin at the direction of Mr. Cone, ever received the definite, final approval of a single stockholder, officer or even employee of the company, including Mr. Cone himself, even Mr. O'Keefe, in his testimony does not throw any doubt upon this, for he seems all along to have acted purely upon assumption, his testimony constantly abounds in the expression: "I took it for granted" when speaking of this grade there is a vast difference between what he may have assumed or taken for granted and the deliberate act of the company in the definite establishment of a grade.

I do not find, therefore, any violation of the contract on the part of the plaintiff, as it will be reformed in accordance with the views before expressed, and it is conceded that the defendant has not complied with its terms, and a decree for its specific performance will, therefore, be signed; I do not, however, regard the insurance placed by the plaintiff upon the property as a proper charge against the defendant. Costs to be paid by the defendant.